Laura **MADDEN, Individually and as the Personal Representative of the heirs and estate of Thomas Madden, Jr. Plaintiff,**

v.

**ABLE SUPPLY COMPANY, et al. Defendants.**

No. CIV.A.G–02–194.

United States District Court, S.D. Texas, Galveston Division.

May 27, 2002.

Peter A Kraus, Walter & Kraus, Dallas, TX, for Laura Madden, Individually and as Personal Representative of the Heirs and Estate of Thomas Madden, Jr., deceased, Thomas Madden, Jr., Deceased, plaintiffs.

George Jerome Kacal, Jr., Houston, TX, for ACandS, Inc., defendant.

Kenneth M Morris, Houston, TX, for Alcoa, Inc. defendant.

Lewis C Miltenberger, Fort Worth, TX, for A.P. Green Industries, Inc., Harbison–Walker Refractories Co., Div. of Indresco, Inc., Indresco, Inc., defendants.

Mary Lou Mauro, Galloway Johnson et al, Houston, TX, for Combustion Engineering, Inc., defendant.

James M Harris, Jr, Harris Lively et al, Beaumont, TX, for Flintkote Company, defendant.

Shelby A Jordan, Jordan Hyden et al, Corpus Christi, TX, Harlin C Womble, Jr, Corpus Christi, TX, Melissa K Ferrell, Segal McCambridge et al, Austin, TX, for Garlock, Inc., defendant.

Gary D Elliston, Forman Perry et al, Dallas, TX, for Gasket Holding, Inc., Kaiser Aluminum & Chemical Corp., Quigley Co., U.S. Gypsum Co., T&N PLC, Turner & Newell Industries, Turner & Newell Ltd., Armstrong World Industries, Inc., Asbestos Claims Management Corp., defendants.

Mel D Bailey, Bailey Crowe et al, Dallas, TX, for Georgia–Pacific Corp., U.S. Mineral Products Co., defendants.

Robert W Wilkinson, Dogan and Wilkinson PC, Pascagoula, MS, for Guardline, Inc., defendant.

Todd Neil Wade, Brown McCarroll et al, Austin, TX, for Kelly–Moore Paint Company Inc., defendant.

John L Hill, Jr, Locke Liddell et al, Houston, TX, for Metropolitan Life Insurance Company, defendant.

David Michael Taylor, Thompson Coe et al, Dallas, TX, Minnesota Mining & Manufacturing Corporation aka 3M, defendant.

D. Ferguson McNiel, Vinson & Elkins, Houston, TX, for North American Refractories Co., defendant.

Randolph L Burns, Baker & Botts, Dallas, TX, for Owens–Illinois, Inc., defendant.

Thomas F Dougall, Bowers Orr et al, Columbia, SC, for Proko Industries, defendant.

Robert H Bass, Forman Perry et al, Dallas, TX, for Uniroyal Holding Co., defendant.

Josephine Jamison, Godwin White et al, Dallas, TX, for Dresser Industries, Inc., defendant.

Frank G Harmon, Crain Caton et al, Houston, TX, for Crown Cork & Seal Co. Inc., defendant.

Warren R Westberg, Godwin White et al, Dallas, TX, for Brown & Root, Inc., defendant.

Lawrence Alan Lynn, Coats Rose et al, Houston, TX, for Foster Wheeler Energy Corporation, defendant.

Gene M Williams, Mehaffey & Weber, Beaumont, TX, for GAF Building Materials Corporation, GAF Corporation, defendants.

Franklin A Poff, Jr, Crisp Boyd et al, Texarkana, TX, for General Refractories Co., defendant.

David Jonathan Fisher, Fairchild Price et al, Center, TX, for JT thorpe Co., defendant.

Gregory Michael Sullivan, Mayor Day et al, Houston, TX, for WR Grace & Co—Conn, defendant.

Lisa Ann Powell, Jackson Walker LLP, Houston, TX, for Able Supply Co., defendant.

John G Bissell, Strong Pipkin et al, Houston, TX, for Viacom Inc, successor to Westinghouse Electric Corporation, defendant.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND AND GRANTING PLAINTIFF'S MOTION FOR SEVERANCE

KENT, District Judge.

This is an asbestosis lawsuit brought by Plaintiff Laura Madden, individually and on behalf of the estate of her deceased husband, against over forty Defendants. Plaintiff's claims, which are derived solely from state law, arise out of asbestos-related personal injuries allegedly suffered by her husband, Thomas Madden, Jr. ("Madden"). Plaintiff originally filed her claims in Texas state court almost eighteen months ago. However, Defendant Viacom, Inc., successor to Westinghouse Electric Corporation ("Westinghouse"),[1] recently removed the entire action to this forum pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[2] Plaintiff filed a timely Motion to Remand for Lack of Subject Matter Jurisdiction, or alternatively, a Motion for Severance. For the reasons articulated below, Plaintiff's Motion to Remand is hereby **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion for Severance is hereby **GRANTED**.

### I.

The following facts are germane to this Order. Madden served in the U.S. Navy for over twenty years. During his military service, he worked on at least one vessel (the USS Wren) that carried turbine generators manufactured by Westinghouse. Plaintiff maintains that those turbines emitted asbestos particles into the surrounding air, causing significant health hazards to persons working nearby. Madden allegedly inhaled a large quantity of this asbestos-laden dust and consequently, contracted mesothelioma. This painful condition, a cancer of the lung lining linked to asbestos exposure, caused Madden's recent death.

Westinghouse does not challenge Plaintiff's assertion that Madden worked in close proximity to its turbines. In fact, Westinghouse candidly admits that it used asbestos-containing thermal insulation in the manufacture of the marine turbines for

---

1. At all times relevant to Plaintiff's claims, Defendant was known as Westinghouse. Thus, the Court will refer to Defendant as "Westinghouse" throughout this Order.

2. Generally, parties removing an action pursuant to § 1442(a)(1) must file a notice of removal within thirty days after receipt of the plaintiff's initial pleading. If, however, the initial pleading does not articulate the details of the plaintiff's claims, the thirty day time period begins to run on the date that the defendant receives "other paper" specifically indicating the grounds for removal. *See* 28 U.S.C. § 1446(b). In this case, Westinghouse filed its Notice of Removal over four months after its receipt of Plaintiff's initial pleading. Nevertheless, because Westinghouse first discovered the potential for removal when it received a copy of Madden's Answers to Master Discovery Requests on February 22, 2002, Westinghouse's March 21, 2002 Notice of Removal was timely filed.

the USS Wren. However, Westinghouse maintains that the decision to manufacture the turbines using asbestos-laden material was not its own. On the contrary, Westinghouse contends that it designed, manufactured and supplied the turbines in accordance with precise specifications and detailed regulations promulgated by a U.S. Naval Officer.

## II.

■ A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper. *See Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995). When determining the propriety of subject matter jurisdiction in the context of a motion to remand, a district court must consider the claims in the plaintiff's state court petition as they existed at the time of removal.[3] *See Manguno*, 276 F.3d at 723; *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995).

■ In this case, Westinghouse asserts that federal jurisdiction exists pursuant to the Federal Officer Removal Statute, which provides:

A civil action ...commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and

division embracing the place wherein it is pending: (1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office.

28 U.S.C. § 1442(a)(1).A moving party satisfies the statute if the party: (1) demonstrates that it acted under the direction of a federal officer, (2) raises a federal defense to the plaintiffs' claims, and (3) demonstrates a causal nexus between the plaintiffs' claims and acts the party performed under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124–25, 134–35, 109 S.Ct. 959, 962, 967, 103 L.Ed.2d 99 (1989). If the moving party satisfies these requirements, that party gains access to a federal forum even if the plaintiff's complaint fails to raise a federal question. *See Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992).

## III.

■ Prior to ascertaining whether Westinghouse properly invoked federal officer removal jurisdiction, the Court queries whether Westinghouse qualifies as a "person" in the context of § 1442(a)(1). The Court in *Arnold By and Through Arnold v. Blue Cross & Blue Shield of Texas*, 973 F.Supp. 726 (S.D.Tex.1997) held that corporations, such as Westinghouse, are not "persons" acting under a federal officer for purposes of federal officer removal. *See id.* at 739. In that case, the Court relied on the Supreme Court's

**3.** In her Motion to Remand, Plaintiff states that "to the extent any claims against Westinghouse regarding exposure to marine turbines assert theories of liability other than failure to warn, [Plaintiff] hereby waives[s] and disavow[s] any such claims." The Court acknowledges this statement and accordingly, invites Plaintiff to file a Motion to Dismiss her non-failure to warn causes of action. As stated

above, however, the Court accepts Plaintiff's claims as alleged in her state court Petition (as it existed at the time of removal) for purposes of determining whether remand is proper. Plaintiff's state court allegations include claims pertaining to the design, manufacture and installation of marine turbines, in addition to Westinghouse's alleged failure to warn.

decision in *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 86, 111 S.Ct. 1700, 1709, 114 L.Ed.2d 134 (1991), which explained that Congress enacted § 1442 to protect individual officers, not federal agencies. *See Arnold*, 973 F.Supp. at 739. In light of *Int'l Primate*, the *Arnold* Court reasoned that corporations, like agencies, do not qualify as "person[s] acting under" an officer for purposes of the statute. *See id.* The Fifth Circuit's holding in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir.1998), *cert. denied*, 526 U.S. 1034, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999), however, overrules *Arnold.* In that case, the Fifth Circuit expressly clarified that "corporate entities qualify as 'persons' under § 1442(a)(1)." *Id.* at 398; *see also Guillory v. Ree's Contract Serv., Inc.*, 872 F.Supp. 344, 346 (S.D.Miss.1994); *Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653 (E.D.Tex.1999) (holding by implication that corporate defendants are § 1442(a)(1) defendants). In reaching their conclusion, the Fifth Circuit noted that the Supreme Court's holding in *Int'l Primate* had been superseded by a 1996 amendment to the statute that expressly allows federal agencies to remove actions against them to federal court. *See Winters*, 149 F.3d at 397, n. 12. Thus, Westinghouse is indeed a "person" for purposes of the Federal Officer Removal Statute.

### The Mesa Test

The Court now turns to the issue of whether Westinghouse satisfies the requisite test for federal officer jurisdiction articulated by the Supreme Court in *Mesa*. In support of its position, Westinghouse submits the affidavit of James M. Gate, former Manager of Design Verification of the Marine Division of Westinghouse, and a marine engineer for Westinghouse since 1953. Gate avers that the Navy, via its Naval Sea Systems Command ("NAVSEA"), "exclusively developed ship designs and plans, as well as comprehensive and detailed regulations and specifications for all shipboard equipment, and its officers supervised, enforced and approved [Westinghouse's] compliance with the plans, regulations and specifications." Gate also avows that "[w]ith respect to turbines-supplied by Westinghouse to the Navy for use aboard the USS Wren, all aspects of the design performance requirements, and materials used for construction, including thermal insulation, were specified by NAVSEA, which acted under the authority of the Secretary of the Navy... NAVSEA specifications incorporated military specifications, and these documents require use of asbestos-containing insulation for the turbines." Finally, Gate avers that "[t]he U.S. Navy had precise specifications as to the nature of any communication affixed to machinery supplied by Westinghouse to the Navy. Westinghouse would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to affix any type of warning or caution statement to equipment intended for installation onto a naval vessel, beyond those required by the Navy, without prior discussion and approval by the Navy." Gate's affidavit is not rebutted by Plaintiff.

1. *Did Westinghouse act under the direction of a federal officer?*

█ The first prong of the *Mesa* inquiry asks if Westinghouse demonstrates that it acted under the direction of a federal officer with respect to the conduct at issue. *See Mesa*, 489 U.S. at 125, 109 S.Ct. at 962–63. The submission of the uncontested Gate affidavit plainly shows that Westinghouse was acting under the direction of a Naval officer in the design and manufacture of the marine turbines. The Gate affidavit also demonstrates that warnings (if any) furnished by Westinghouse in con-

nection with the turbines were made pursuant to Navy directives.

### 2. Has Westinghouse raised a colorable federal defense?

■ The second issue to address under *Mesa* is whether Westinghouse raises a federal defense to Plaintiff's claims. *See id.* at 129, 109 S.Ct. at 965. Under *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), any party qualifying as a federal officer who can raise a colorable defense arising out of their duty to enforce federal law is entitled to remove. The party need not prove that it can sustain the defense, but only that it presents a colorable claim. *See id.* at 406, 89 S.Ct. at 1816. As explained by the *Willingham* Court, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id.* at 407, 89 S.Ct. at 1816. However, the removing party need not prove its case prior to removal, and courts should not frustrate the policy of protecting federal officers by adopting "a narrow, grudging interpretation of § 1442(a)(1)." *Id.*

■ Westinghouse invokes the federal "military contractor defense" articulated by the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Pursuant to this defense, a defendant who designs or manufactures products under the direction of the federal government can evade liability under state law for injuries resulting from the use of those products by demonstrating that: (1) the United States approved reasonably precise specifications for the contracted-for equipment; (2) the equipment conformed to those specifications; and (3) the equipment supplier warned the United States about possible dangers in the use of the equipment known to the supplier but unknown to the United States. *See id.* at 512, 108 S.Ct. at 2518.

The *Boyle* Court explained that without this protection, government contractors facing possible liability arising from their performance of government contracts would either decline to manufacture equipment according to government specifications or raise their prices. *See id.* at 507, 108 S.Ct. at 2515–16. Either way, the United States' interest in the procurement of equipment would be directly affected. Thus, this rationale provides a sufficient condition for the displacement of state law. *See id.* While *Boyle* applied the enunciated test to a design defect case, the Fifth Circuit later established that *Boyle* likewise applies in failure to warn scenarios. *See Garner v. Santoro*, 865 F.2d 629, 635 (5th Cir.1989); *Bynum v. FMC Corp.*, 770 F.2d 556, 574 n. 24 (5th Cir.1985).

In her Motion to Remand, Plaintiff vehemently argues that Westinghouse cannot successfully establish the military contractor defense. Under *Willingham*, however, whether Westinghouse will ultimately prevail on the defense is irrelevant. So long as Westinghouse has established a *colorable* claim to a federal defense, the second prong of the *Mesa* test is satisfied. And in light of the unrebutted facts averred by Gate, Westinghouse easily sustains that burden.

### 3. Has Westinghouse demonstrated a causal nexus?

The third prong of the *Mesa* test requires Westinghouse to exhibit a causal nexus between the claims against it and the acts it performed under the color of federal office. *See Mesa*, 489 U.S. at 133, 109 S.Ct. at 967. Plaintiff's claims against Westinghouse pertain to the design, construction and installation of marine turbines on U.S. Navy vessels; and to the warnings (or the lack thereof) affixed to those turbines. These turbines were constructed pursuant to stringent Naval

specifications. Moreover, any warnings promulgated (or not promulgated) with respect to the turbines were governed by Navy guidelines. Thus, the causal nexus is axiomatic. Accordingly, because all three prongs of the *Mesa* test are satisfied in this case, Plaintiff's Motion to Remand is hereby **DENIED** with respect to her claims against Westinghouse only.

## IV.

In her Motion for Severance, Plaintiff requests that if the Court exercises subject matter jurisdiction over her claims against Westinghouse, the Court sever those claims from her claims against the other Defendants ("Remaining Claims") and remand the Remaining Claims to state court. In evaluating Plaintiff's request, the Court is guided by the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section (a) of that statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section (c) of the statute refines the supplemental jurisdiction doctrine by enumerating four circumstances in which District Courts have discretion to decline supplemental jurisdiction over state law claims: (1) when the claims raise novel or complex issues of state law; (2) when the claims substantially predominate over the claims within the district court's original jurisdiction; (3) when the district court dismisses the claims over which it has original jurisdiction; and (4) in exceptional circumstances, if there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In this case, the second and fourth factors enumerated in § 1367(c) are clearly present. As stated in her Motion to Remand, Plaintiff intends to pursue only one cause of action against Westinghouse-failure to warn. Thus, a single claim asserted against a sole Defendant falls within the scope of the Court's original jurisdiction. On the other hand, the lengthy list of additional causes of action asserted against the remaining Defendants (all forty of them) are supplemental state law claims. Plainly, the Remaining Claims, which are exclusively derived from state law, "substantially predominate" over Plaintiff's single failure to warn claim against the sole "federal officer" Defendant. Moreover, the Court concludes that compelling reasons counsel in favor of remanding the Remaining Claims to state court. First, the Remaining Claims have been pending in state court (Plaintiff's chosen forum) for nearly two years. Effecting a forum change at this crossroads, when all of the Parties have spent considerable time and money preparing for a state court trial (as opposed to a trial in a federal forum), would cause unnecessary hardship to all involved. Next, Plaintiff's state court trial setting is less than eight weeks away. At this late date, practically on the eve of trial, the Court finds delaying the resolution of the Remaining Claims senseless and unjustified. Finally, if the Remaining Claims are not remanded, they will surely be transferred to the MDL Court in the Eastern District of Pennsylvania. There are thousands of asbestos cases pending in that forum and, if history be any indicator, Plaintiff's claims against the Remaining Defendants will not be heard for many years. Keeping these claims in federal court will not increase efficiency and expediency. Rather, the opposite is true. Accordingly, the Court declines to exercise its supplemental jurisdiction over the Remaining Claims. As such, those claims are hereby **SEVERED** from Plaintiff's claims against Westinghouse and **REMANDED**

to the 122nd Judicial District Court for Galveston County, Texas.

**IT IS SO ORDERED.**