Edward **MACHNIK** et al., Plaintiffs

v.

**BUFFALO PUMPS INC.,**
et al., Defendants.

Civil Action No. 3:07cv357 (CFD).

United States District Court,
D. Connecticut.

Sept. 17, 2007.

properly served the Probation Office and, as such, said office has not appeared in this case.

Brian P. Kenney, Christopher Meisenkothen, Early, Ludwick & Sweeney, New Haven, CT, for PlaintiffS.

Geoffrey Lane Squitiero, Maher & Murtha, Bridgeport, CT, James R. Oswald, Adler, Pollock & Sheehan, Providence, RI, Dan E. Labelle, Halloran & Sage, Westport, CT, Timothy E. Kapshandy, Sidley Austin LLP, Chicago, IL, James M. Celentano, Halloran & Sage, Hartford, CT, for Defendants.

### *RULING ON MOTION TO REMAND*

DRONEY, District Judge.

The plaintiffs, Edward Machnik ("Machnik") and his wife, Elizabeth Machnik, brought this action against General Electric Co. ("GE"), Viad Corp. ("Viad"), and several other defendants in Connecticut Superior Court on February 7, 2007. Machnik was diagnosed with malignant mesothelioma in December, 2006. Machnik served as a machinist's mate in the U.S. Navy from 1949 to 1952, where he worked in the engine room and boiler room of the U.S.S. Vogelgesang. His complaint alleges that he developed mesothelioma because he was exposed to asbestos-containing products manufactured by the defendants during his Navy service. Machnik claims

that the defendants violated their duty under Connecticut law to warn him of the dangers of asbestos exposure. Viad filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), which GE joined, on March 7, 2007. Machnik now seeks to remand the case back to state court. For the following reasons, Machnik's motion is denied.

## A. Legal Standard for Removal under 28 U.S.C. § 1442(a)(1)

 Section 1442(a) of Title 28 of the United States Code provides for the removal of any civil action against "the United States or any agency thereof or any officer (or any other person acting under that officer) of the United States ... sued ... for any act under color of such office." 28 U.S.C. § 1442(a)(1). Removal of cases against government contractors is proper under this statute where three requirements are met. Specifically, the government contractor must prove (1) that it has a colorable federal defense, (2) that it acted under the direction of a federal officer or agency, and (3) that a causal nexus exists between the plaintiffs' claims and "what the [contractor] has done under asserted official authority." *Mesa v. California*, 489 U.S. 121, 131, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Nesbiet v. Gen. Elec. Co.*, 399 F.Supp.2d 205, 210 (S.D.N.Y. 2005). The statute creates an exception to the well-pleaded complaint rule; even if a plaintiff's complaint does not, on its own, raise a federal question, federal jurisdiction is proper where a defendant establishes these three requirements. *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 430–31, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). Although the defendant seeking removal bears the burden of proving federal jurisdiction through these requirements, "the policy [underlying the statute] favoring removal should not be frustrated by a narrow, grudging interpretation" of the statute. *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58

(1981) (citation and quotation marks omitted); *see Jefferson County*, 527 U.S. at 431, 119 S.Ct. 2069 ("We ... do not require the officer virtually to win his case before he can have it removed." (quotation marks omitted)).

## B. Analysis

### 1. Colorable Federal Defense

 GE claims that it is immune from state tort liability on the ground that it was serving as a military contractor at the time of Machnik's claimed exposure to asbestos. This "military contractor defense," if established, presents a colorable federal defense in both design defect and failure to warn cases. *Boyle v. United Techs., Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *Grispo v. Eagle–Picher Indus., Inc.*, 897 F.2d 626, 629 (2d Cir.1990). "The military contractor's defense is premised on federal displacement of state law where state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 839 (2d Cir.1992). To show such a conflict, and hence to assert this federal defense, a defendant must prove three elements: (1) "the United States approved reasonably precise specifications" for the military equipment supplied by the contractor; (2) "the equipment conformed to those specifications; and (3) the [military contractor] warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States." *Boyle*, 487 U.S. at 512, 108 S.Ct. 2510. In a failure to warn case, to defendant must establish the first prong of this test by showing that "whatever warnings accompanied a product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings

meant to accompany the product." *Grispo*, 897 F.2d at 631. In accordance with the policy underlying the removal statute, the defendant need not fully prove its federal defense on the merits to justify removal.[1] *Nesbiet*, 399 F.Supp.2d at 210–11 (citing *Jefferson County*, 527 U.S. at 431, 119 S.Ct. 2069).

■ The Court finds that GE has established a colorable military contractor defense. To prove the "reasonably precise specifications" requirement, GE must show that the government actively participated in creating the specifications for the products and warning labels GE supplied, and that the government imposed these specifications on GE. *In re Agent Orange Product Liab. Litig.*, 304 F.Supp.2d 404, 434 (E.D.N.Y.2004). GE satisfied this burden through the Affidavit of Ben J. Lehman, Rear Admiral U.S. Navy, Retired, which avers that the Navy exercised complete control over every aspect of all equipment supplied by contractors, including warnings, and that any materials or equipment supplied that was inconsistent with the Navy's specifications would have been rejected. Affidavit of Ben J. Lehman, October 6, 2004, at ¶¶ 3–5 ("Lehman Aff."). Lehman, who worked as a Ship Superintendent and Planning Officer at the Brooklyn Navy Yard between 1942 and 1944, an engineer at GE from 1946 to 1948, and as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, has personal knowledge of the contracts that existed between the Navy and its contractors during the period of Machnik's Navy service. Lehman Aff., at ¶ 1. At this preliminary stage, Lehman's affidavit sufficiently establishes that the U.S. Navy imposed "reasonably precise specifications" on GE, both in the design of the equipment it supplied and in the content of the accompanying written materials, including warnings. *See Nesbiet*, 399 F.Supp.2d at 207–09 (finding Lehman possessed sufficient personal knowledge of military contracts during 1940s to establish first prong of colorable federal contractor defense).

■ To prove the second prong of the military contractor defense, GE must show that the products it supplied to the Navy conformed to the Navy's specifications. *In re Agent Orange*, 304 F.Supp.2d at 434. "As a matter of law, satisfaction of [this element] of the government contractor defense requires accurate conformity with specifications or government approval of the delivered product." *Id.* at 435. Essentially, GE must demonstrate that the navy "received exactly what it sought." *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 89 (2d Cir.1993). Again, the Lehman affidavit satisfies this element; the affidavit states that any materials supplied by a contractor that were not entirely consistent with the Navy's extensive specifications probably would have been rejected. Lehman Aff., at ¶ 3. From this, the inference can be drawn that if Machnik was exposed to GE's products while on board a Navy ship, that equipment fully complied with the Navy's detailed specifications concerning both design and warnings. See Lehman Aff., at ¶ 5 ("In short, the Navy

---

1. Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing for this reason. Subject matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the plaintiff's cause of action rests on state law. 28 U.S.C. § 1442(a)(1). Machnik's claims against GE are based only upon his exposure to asbestos-containing products supplied by GE to the U.S. Navy. Because of this, once GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction. *See Frawley v. Gen. Elec. Co.*, No. 06 Civ. 15395, 2007 WL 656857, at * 4 (S.D.N.Y. Mar. 1, 2007) (holding that the plaintiff must plead around all claims against federal contractors to avoid federal contractor jurisdiction).

dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.").

■ The third prong of the military contractor defense requires GE to show that, at the time of Machnik's alleged exposure to asbestos, GE did not fail to warn the Navy of any dangers associated with asbestos that were known to GE but not to the Navy. *Boyle,* 487 U.S. at 512, 108 S.Ct. 2510. GE satisfies this element through the affidavit of Lawrence Stilwell Betts, which establishes that the Navy "was well aware of the health hazards associated with the use of asbestos from the early 1920s" through a review of available military documents and other relevant publications. Affidavit of Lawrence Stilwell Betts, March 21, 2007, at ¶¶ 27–33 ("Betts Aff."). Further, Betts's affidavit provides a basis for concluding that the Navy, and not military contractors, was in the best position to know of the health hazards related to asbestos. *Id.; see Nesbiet,* 399 F.Supp.2d at 209, 212 (discussing Betts affidavit and finding it sufficient to establish third prong of colorable federal defense).

In light of the above evidence, GE has established a colorable federal defense.

### 2. Requirement that GE "Acted Under" a Federal Officer or Agency

■ To meet this requirement, GE must show that the Navy controlled the warnings it could provide for its products, and that this Navy control prevented GE from fulfilling its state law duty to warn of the hazards related to asbestos exposure.

*Nesbiet,* 399 F.Supp.2d at 212. As discussed above, GE sufficiently established, for purposes of this motion, that the Navy's specifications precluded GE from including warnings with the equipment it supplied. In turn, this establishes that GE did not provide warnings about asbestos because it was acting under the direction of the Navy. *Id.* ("GE's proffer has established that the Navy determined the nature of warnings to be included on the turbines.... This evidence in turn raises an inference that GE's alleged failure to warn of the dangers of asbestos resulted from the Navy's prohibition of any such warning.").

Machnik fails to rebut GE's evidence on this point. Although Machnik provided a set of military specifications ("milspecs") for the service and use manuals for electrical and mechanical equipment used aboard Navy ships, these milspecs are insufficient for two reasons. First, they are dated June 6, 1961, several years after Machnik concluded his Navy service. Second, the language used in the milspecs does not support Machnik's argument that GE could have included warnings on the equipment it supplied.[2] Rather, the milspecs require that warnings concerning equipment must be kept to a minimum and should relate to proper operating procedures. *See* Military Specification, Manual, Service (Instruction Books) for Shipboard Electrical and Mechanical Equipment, MIL–M–15071D (SHIPS), at § 3.3.6 (June 6, 1961); Betts Aff., at ¶ 32. Accordingly, GE has sufficiently established that it "acted under" the direction of the Navy when it supplied the Navy with equipment without warnings about asbestos exposure.[3]

---

**2.** The Court notes that another district court within this Circuit, faced with similar evidence from plaintiffs suing GE on the same theory of liability, also reached this conclusion. *Nesbiet,* 399 F.Supp.2d at 208–09.

**3.** The Court recognizes that another Court in this district, in *Fortier v. Ampco–Pittsburgh Corp.,* Case No. 07–cv–5, 2007 WL 735703, addressed similar issues and nearly identical facts on a motion to remand the case to state court. Although that Court granted the plain-

### 3. *"Causal Nexus" Requirement*

 Finally, to show the existence of a "causal nexus," GE must show that Machnik's claims "[arose] out of the acts done by [the defendant] under color of federal authority." *Mesa*, 489 U.S. at 131–32, 109 S.Ct. 959. Specifically, GE must show that the "government controlled which warnings [GE] was allowed to provide . . . and thereby precluded the warnings at issue from being given." *Densberger v. United Techs. Corp.*, 297 F.3d 66, 75 (2d Cir.2002). As discussed above, the Lehman affidavit proffers that contractors supplying equipment to the Navy were required to fully comply with all of the detailed specifications set by the Navy, including warnings. Lehman Aff., at ¶¶ 3–5. Machnik provided no evidence to rebut the inference that GE did not include warnings on its equipment because it aimed to comply with the Navy's specifications. Hence, GE sufficiently established the "causal nexus" between its actions and Machnik's claims for purposes of this motion.

### C. *Conclusion*

The Court finds that GE met its burden to justify federal officer removal of this suit from the Connecticut Superior Court. Accordingly, Machnik's motion to remand [docket # 22] is denied, and the case will remain in federal court.[4]

---

tiffs' motion to remand, this Court respectfully disagrees with his decision. GE was also a defendant in that case, and avers here that it submitted the same evidence of a federal defense in both cases. *Fortier*, however, did not analyze GE's evidence concerning the specifications the Navy issued to its contractors. Rather, that ruling focused on evidence of the Uniform Labeling Program ("ULP"), which governed the labeling of hazardous chemicals by Naval personnel, not outside product manufacturers. The Court finds the affidavits and other evidence, including milspecs, to be determinative here.

4. Since the Court finds that GE presented an adequate showing to justify removal pursuant to 28 U.S.C. § 1441(a), and because the Court may exert supplemental jurisdiction over all remaining claims and defendants in the suit under 28 U.S.C. § 1367(a), the Court does not address defendant Viad's arguments in opposition to Machnik's motion to remand.