William J. HILBERT, Jr. and Pamela R. Hilbert, Plaintiffs,

v.

AEROQUIP, INC., et al., Defendants.

Civil Action No. 07–10205–NG.

United States District Court, D. Massachusetts.

April 12, 2007.

Erika A. Olson, Michael C. Shepard, The Shepard Law Firm, P.C., Boston, MA, for Plaintiffs.

Sheryl A. Koval, Shepard M. Remis, Marcy D. Smirnoff, Goodwin Procter LLP, Boston, MA, for Defendants.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Lawrence G. Cetrulo, Cetrulo & Capone, LLP, Boston, MA, for Third–Party Plaintiff.

## ORDER

GERTNER, District Judge.

I adopt Judge Dein's Report and Recommendation in all its particulars: there is no colorable military contractor defense as Judge Dein found; nor is there a colorable derivative sovereign immunity defense. Finally, there is no basis for staying this order.

## REPORT AND RECOMMENDATION ON MOTION FOR REMAND AND MOTION TO STAY

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, William J. Hilbert, Jr., was diagnosed with mesothelioma, a terminal cancer, in August 2005. He contends that his illness was caused by his exposure to asbestos through everyday contact with asbestos-containing aircraft components. Mr. Hilbert and his spouse commenced this action against 29 defendants in the Middlesex Superior Court Department of the Massachusetts Trial Court on December 21, 2006. Northrop Grumman Corporation ("Northrop" or the "defendant") removed the action to this court on February 2, 2007 under 28 U.S.C. § 1442(a)(1) (federal officer or agency removal).

This matter is presently before the court on Plaintiffs' Motion for Remand (Docket No. 3) by which the plaintiffs are seeking to remand the action to state court or, in the alternative, sever the case against Northrop and remand the case against the other defendants. In addition to opposing the remand, Northrop, on March 1, 2007, filed a Motion to Stay (Docket No. 15) requesting that this court stay all proceedings, including consideration of the Motion for Remand, pending transfer of the case

by the Panel on Multidistrict Litigation ("MDL") to the asbestos docket in the Eastern District of Pennsylvania. A hearing on these motions was held on March 2, 2007 and, by agreement, briefing was completed by the close of business on March 9, 2007. For the reasons detailed herein, this court recommends that Northrop's supporting affidavit be stricken as it is not based on personal knowledge. Even if the affidavit is considered, this court concludes that the defendant has failed to establish a causal nexus between its actions under asserted federal authority and the plaintiffs' claims, or the existence of a colorable federal defense. Therefore, and after consideration of the pleadings and arguments of counsel, this court recommends to the District Judge to whom this case is assigned that the Plaintiffs' Motion to Remand (Docket No. 3) be ALLOWED and that Northrop's Motion to Stay (Docket No. 15) be DENIED.

## II. STATEMENT OF FACTS

Mr. Hilbert was diagnosed in August 2005 with mesothelioma, a terminal cancer. He contends that his condition was caused by his exposure to asbestos-containing aircraft components. Northrop is an aircraft manufacturer. According to his complaint and Disclosure Form, Mr. Hilbert was employed by the United States Navy as an aircraft mechanic from 1955 to 1974 and it was during this employment that he would have been exposed to Northrop's products. Mr. Hilbert's complaint asserts claims of negligence and breach of warranties against all the defendants, including Northrop. The claims against Northrop are limited to claims for failure to warn. Specifically, plaintiffs describe their claims as being "based upon two main premises: (1) the plaintiff William Hilbert was exposed to asbestos from brakes, clamps and gaskets used on Northrop Grumman aircraft, and (2) that Northrop Grumman failed to warn about the health hazards associated with asbestos exposure from these products." [1] *Remand Memo* (Docket No. 7) at 13.

### Basis for Removal

Northrop removed this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), claiming that "(1) NGC was acting under the direction of a federal officer or agency; (2) NGC has colorable federal defenses arising out of its duties to the federal

---

1. Although Northrop contends that the complaint against it cannot be read as limited to failure to warn claims, the plaintiffs have confirmed both orally and in writing that the claims against Northrop are so limited. *See Remand Memo* (Docket No. 7) at 15–16 ("plaintiffs' attorneys hereby state under Rule 11 that they are only proceeding against Northrop Grumman on a failure to warn theory of liability and not on a theory of defective design."). Moreover, this representation is consistent with the complaint in which it is alleged that "[t]o the extent that any of the plaintiff's asbestos exposure occurred on board vessels of the United States Navy or the construction and/or repair of such vessels, plaintiff's [negligence and breach of warranty] claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators, steam traps, and other mechanical equipment installed on such vessels are not based on a theory of defective design, but rather on the theory of failure to warn." *Complaint* ¶¶ 14, 22. Thus, this is not a situation where Mr. Hilbert has attempted to avoid removal by narrowing his complaint. *See Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 658 (E.D.Tex.1999) ("once a defendant properly removes a case to federal court, a plaintiff may not defeat the removal by simply amending the complaint"). Consequently, this Report and Recommendation is premised on the fact that the claims against Northrop are for failure to warn. *See Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 128 n. 3 (3rd Cir.1998) (where remand motion allowed on basis that claim was limited to failure to warn, a new removal petition may be filed if plaintiff broadens claims on remand).

government; and (3) NGC will demonstrate that there is a causal connection between the acts performed by it under color of federal office and Plaintiffs' allegations in the case at bar." *Removal Notice* (Docket No. 1) at 9. Specifically, Northrop alleged as follows: [2]

> Plaintiffs base their claims against NGC on alleged exposure to asbestos by William Hilbert while working with "various" products manufactured, sold, or distributed by NGC. On information and belief, to the extent that the design or manufacture of these products included asbestos-containing parts or components, such inclusion was explicitly and directly required by the United States Government in its detailed and precise specifications through and under the direction of the Secretaries of the Departments of Defense and the United States Navy. Any decision regarding asbestos in these products was under the full control and discretion of the United States Government.

*Removal Notice* ¶ 11. Northrop also contends that it is entitled to federal officer removal "based on the separate and additional federal defense of derivative sovereign immunity" due to the fact that "on information and belief, the acts complained of were performed at the direction of Government officers acting pursuant to Government authorization and if the Government had performed these acts directly, it would be immune from suit." *Id.* at ¶ 15.

In opposition to the Remand Motion, Northrop has submitted the Affidavit of John F. DeBois (Docket No. 13–2). Plaintiffs have moved to strike this affidavit as not being based on personal knowledge. This court agrees, and recommends that the affidavit be stricken.

Mr. DeBois is currently the Director of Contracts and Pricing for the Airborne Early Warning and Electronic Warfare Systems business of Northrop's Integrated Systems Sector. *DeBois Aff.* ¶ 1. He began his employment with Grumman Aircraft Corporation over 30 years ago and joined Northrop when the companies merged. *Id.* In his work with Grumman and Northrop he oversaw government contracts to provide military aircraft and required parts. *Id.* ¶ 2. In describing the basis for his personal knowledge, Mr. DeBois attested:

> [In light of my positions] I have personal knowledge of the current and historical procedures relating to contracts with the United States government as well as the terms typically included in such contracts and access to the related records of Grumman and Northrop Grumman Corporation (collectively, "Northrop") and its subsidiaries.

*Id.* ¶ 3. Although his employment with Grumman and Northrop post-dated the period at issue in this case, Mr. DeBois does not indicate whether he actually reviewed contracts from the relevant period or spoke with anyone with personal knowledge. Nor does he otherwise describe any

---

**2.** Northrop did not submit any affidavits in support of its Notice of Removal, although it reserved the right to do so if plaintiffs filed a motion to remand. *Removal Notice* ¶ 18. Plaintiffs object to the Affidavit of John DeBois filed in opposition to the motion for remand citing *McGlasson v. Barger,* 220 F.Supp. 938 (D.Colo.1963). In *McGlasson* the court refused to consider affidavits submitted at the remand hearing where the removal petition lacked factual allegations to support jurisdiction. *Id.* at 940–41. *McGlasson* has not been cited by any other court. Moreover, since Northrop's Removal Notice did refer to the factual basis for jurisdiction, and did reference its intent to file affidavits if necessary, this court concludes that the sufficiency of Mr. DeBois' affidavit should be evaluated by the court.

particular steps that he took in order to obtain knowledge regarding the contents of government contracts in effect during the time period from 1955 to 1974 when Mr. Hilbert was working for the Navy.

Much of Mr. DeBois' affidavit is directed to the Navy's involvement in the design of the aircraft manufactured and supplied by Northrop. *See, e.g., id.* ¶¶ 5–15. As he summarized the status of such work:

> In short, in accordance with contract requirements, the U.S. Navy was directly and intimately involved with development and controlled the design of every aspect of the aircraft, including without limitation the types of materials used in the aircraft and their component parts. U.S. Navy representatives closely monitored Northrop's work at every step in the design process and U.S. Navy evaluation and approval had to occur at every step. Northrop had little or no leeway in determining the required design of the aircraft, including the required materials for the component parts and their painting and marking.

*Id.* ¶ 14. With respect to warnings, Mr. DeBois attested as follows:

> 16. In addition, the U.S. Navy had ultimate control over warnings affixed to the Northrop aircraft used by the U.S. Navy, as well as written materials accompanying Northrop aircraft used by the U.S. Navy during this time period.

> 17. The U.S. Navy had precise specifications as to the nature of any information that was to be affixed to equipment supplied to it by Northrop. Under the U.S. Navy's specifications and procedures, as well as under actual U.S. Navy practice as it evolved in the field, Northrop would not have been permitted to affix any type of warning or caution to a piece of equipment, beyond those expressly specified by the U.S. Navy.

> 18. The U.S. Navy also had precise specifications as to the nature and contents of all written materials. These materials included safety and hazard information only to the extent directed by the U.S. Navy.

> 19. Northrop took no action with regard to maintenance manuals provided to U.S. Navy aircraft mechanics, other than under contract with the government and in conformity with government specifications.

> 20. The U.S. Navy maintained control over the contents of any manuals and made revisions to the contents without the consultation or knowledge of Northrop.

> 21. U.S. Navy personnel, including users of any manuals, contributed the majority of expertise into the proposed changes to the manuals.

The plaintiffs contend that this affidavit cannot be based on Mr. DeBois' personal knowledge because the language used is identical to the language used in an affidavit of David Hobson, which was submitted by General Electric Co. in the case of *Nesbiet v. General Electric Co.*, 399 F.Supp.2d 205, 207 (S.D.N.Y.2005). Moreover, the plaintiffs note, the *Nesbiet* court concluded that the affidavit was not based on Mr. Hobson's personal knowledge as his deposition in that case established that he did not have knowledge of exact contract provisions at the relevant time. *Id.* Similarly, Mr. DeBois' affidavit indicates that he would not have had personal knowledge of the contract provisions at the relevant times. For these reasons the plaintiffs have requested that Mr. DeBois' affidavit be stricken. In the alternative, they request that the non-removing defendants be severed and remanded, and that Northrop be ordered to produce Mr. DeBois for a deposition to explore the founda-

tion for his statements. *Pls. Reply Memo* (Docket No. 19) at 5.

In response to Mr. DeBois' assertions, the plaintiffs have submitted various military specifications which they contend dispute any implication that the Navy prohibited manufacturers from placing additional warnings on products. *Id.* at 6. For example, they have attached the Military Specification for Aircraft Wheel and Brake Assemblies as well as the specifically incorporated standards governing "Marking for Shipment or Storage." Pls. Exs. H, I. Plaintiffs point out that these specifications (Ex. H) do not require asbestos in brake linings (with the implication being that the brake linings did, in fact, contain asbestos), and that the incorporated standards require that "[s]pecial handling instructions, marking, and warnings shall be shown as required by [specified regulations], and by statute, regardless of destination of shipment." Pls. Ex. I at § 5.5.15.1. As the plaintiffs argue, "[ ]this clearly shows the Navy's intent to make sure that warnings that were required by law were included. Thus, not only did Northrop Grumman's contracts with the Navy not prohibit them from warning about asbestos, they specifically required them to include any warnings required by statute, such as M.G.L. c. 106, § 2–314." *Pls. Reply Memo* (Docket No. 19) at 6. The plaintiffs have also submitted other Navy manuals and regulations which indicate that at least with respect to hazard-

ous chemicals *and materials*, the Navy recognized that additional warnings as required by state and federal laws may be added to those required by their own regulations.[3]

Despite originally having submitted the affidavit of Mr. DeBois in which, as described above, he attested to his familiarity with all possibly relevant Navy contracts and regulations, as well as to the "Navy's practice as it evolved in the field," Northrop did not submit any additional affidavits in response to the plaintiffs' submission of these specifications and manuals. Rather, it argues in its Surreply Memorandum (Docket No. 29) as follows:

> Plaintiffs attach four documents to their Reply as support for their assertion that the government did not prohibit asbestos warnings. While the dates shown on these documents appear to fall within the time period that Mr. Hilbert allegedly was employed by the Navy, Plaintiffs provide no evidence that the specifications provided were applicable to the contracts under which Northrop allegedly manufactured aircraft. Nor do Plaintiffs provide any evidence that these specifications were ever provided to Northrop in any time period during which Northrop manufactured or assembled aircraft on which Mr. Hilbert allegedly performed maintenance (which time period Plaintiffs have not disclosed), that these regulations were applicable during Mr. Hilbert's entire employment history,

---

**3.** For example, Pls. Ex. J is a "Guide for the Preparation of Warning Labels for Hazardous Chemicals." It provides that "Individual statutes, regulations or ordinances may require that particular information be included on a label or that a specific label be affixed to a container. In each case, the requirements of these laws should also be studied. *The warning labels suggested in this Manual should be used in addition to, or in combination with, any label required by law.*" Pls. Ex. J at 1 (emphasis in original). In fact, these regula-

tions encourage sellers to affix safety labels, at least to containers of hazardous chemicals, "bearing appropriate precautionary statements[.]" *Id.* Regulations issued by the Department of the Navy governing the labeling for "hazardous industrial chemicals *and materials*" (Pl's. Ex. K at § 2) also recognize that in addition to the Navy's own requirements, labels may be affixed by a manufacturer in accordance with state and federal laws and regulations (*Id.* at § 2a) (emphasis added).

let alone that these specifications related to any product allegedly manufactured by Northrop.

In addition, the specifications provided either do not apply to any product that would have been assembled by Northrop or only apply to limited sections of the aircraft that allegedly might have been assembled by Northrop. *Northrop's Surreply* (Docket No. 29) at 1–2. As detailed more fully below, this court is struck by Northrop's inability to respond to the plaintiffs' submission with an affidavit of anyone with personal knowledge as to the contracts and regulations which actually applied during the relevant period. Moreover, whether or not these regulations will be found to be controlling in the instant case following discovery, they certainly cast doubt on Mr. DeBois' general assertion that Northrop categorically would not have been permitted to apply appropriate health warnings on the aircraft it sold to the Navy.

## III. *ANALYSIS*[4]

### A. *Motion to Stay*

■ As an initial matter, Northrop has requested that this court stay the litigation, including the motion to remand, pending transfer of this case to the MDL asbestos docket in the Eastern District of Pennsylvania. This court recommends that the motion to stay be denied.

The issue raised by the motion to remand, *i.e.* whether Northrop properly removed this action under 28 U.S.C. § 1442(a)(1) (federal officer removal) does not raise issues exclusively within the area of expertise of the MDL Court. This court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court. Where, as here, the mo-

tion to remand does not "implicate[ ] issues that are within the exclusive jurisdiction of the MDL Court ... the motion[ ] to remand can be resolved without encroaching on the exclusive territory of the MDL Court." *In re Massachusetts Diet Drug Litigation,* 338 F.Supp.2d 198, 201 (D.Mass.2004). Under such circumstances, a stay is not warranted. *Id.,* and cases cited.

Moreover, the resolution of the motion to remand requires an analysis of the unique facts of this case as presented to this court. The issue is whether Northrop met its burden of proving the elements of federal officer jurisdiction, not whether all manufacturers of products containing asbestos who sold such products to the Navy are entitled to invoke this court's jurisdiction. "The same degree of judicial resources must be expended here or in the District of [Pennsylvania] to make an assessment of which party should prevail." *Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc.,* 415 F.Supp.2d 516, 521 (E.D.Pa.2005). Since only one federal court needs to "make an individualized assessment of the jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL Court. *Id.*

Finally, this court finds no reason to require the plaintiffs to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction. To undergo such a lengthy process to find out that there is no federal jurisdiction would be a travesty of justice given Mr. Hilbert's medical condition. For all these reasons, this court recommends that the motion to stay be denied and that the motion to remand be addressed.

---

4. Due to the exigencies of time, this court has not addressed all of the arguments raised by the parties. However, they have been considered.

### B. *Motion to Remand—Standard Generally*

■ 28 U.S.C. § 1442(a)(1) grants "a right of removal to federal officers who face civil or criminal actions in state court for their official acts. The right of removal may extend to private individuals or entities 'acting under' a federal officer, as long as the private actor asserts a colorable federal defense to the state claims, and demonstrates a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims." *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F.Supp.2d 1144, 1149 (D.Colo.2002) (numerous internal citations omitted).[5] The burden is on defendants to establish the elements of federal officer jurisdiction. *Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 659 (E.D.Tex.1999); *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992). Moreover, because the statute "is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities." *Freiberg*, 245 F.Supp.2d at 1150. "If the right to remove is doubtful, the case should be remanded."[6] *Id.* at 1151.

■ To the extent that Northrop is asserting a "colorable federal defense" it is relying on the federal or military contractor defense as prescribed by the Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), as well as sovereign immunity. *Boyle* provides that government contractors are shielded from liability in state court for defects in products or equipment supplied to the United States only when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." *Freiberg*, 245 F.Supp.2d at 1151 (quoting *Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518); *see also Green v. A.W. Chesterton Co.*, 366 F.Supp.2d 149, 152–53 (D.Me.2005) and cases cited. The *Boyle* standard is not, on its face, applicable to failure to warn cases. *See Tate v, Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir.1995) (acknowledging that on its face "the rule announced in *Boyle* applies only to design claims"). Some courts have concluded that the federal contractor defense has no application in a case based on a failure to warn, especially in the absence of evidence that the government prohibited any warnings. *See, e.g., Epperson v. Northrop Grumman Systems Corp.*, No.

---

5. Put another way, the removing party must establish the following: "1) the removing defendant must be a federal officer or a 'person' acting under a federal officer; 2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and 3) the removing defendant asserts a colorable federal defense." *Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 659 (E.D.Tex.1999), citing *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

6. This court believes it unnecessary to address in detail the parties' differing opinions as to whether federal removal jurisdiction should be narrowly or broadly construed since this court finds removal inappropriate under either interpretation. This court notes, however, that it would adopt the position of the *Freiberg* court that "[g]iven the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interests, I agree it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue." *Freiberg*, 245 F.Supp.2d at 1152, n. 6.

4:05CV2953, 2006 WL 90070, \*5 (E.D.Va. January 11, 2006) ("not only in 'thousands' of previous asbestos cases did this court find that failure to warn cases are not subject to government contractor immunity, but the facts here indicate that, based on the reasoning in *Boyle,* the government contractor immunity defense does not apply to plaintiff's failure to warn claims"). Other courts have concluded that *Boyle* is applicable, and "provides guidance in determining when state law governing a failure to warn claim can be displaced." *Tate,* 55 F.3d at 1157. This court finds the cases applying *Boyle* to failure to warn cases more persuasive as they present factual scenarios involving government involvement in warnings more akin to the case before this court. Therefore, this court concludes that the federal contractor defense may be applied in failure to warn cases.

Those courts which recognize the defense in failure to warn cases apply differing standards of review. Thus, "some courts find that the government contractor defense preempts failure to warn claims whenever the defense applies to design defect claims and the specifications are silent about warnings. On the opposite extreme, some other courts imply a requirement that the government prohibit warnings before the defense may be invoked for a failure to warn claim." *Quiles v. Sikorsky Aircraft,* 84 F.Supp.2d 154, 171

n. 5 (D.Mass.1999) (internal citation omitted). Some courts require that the contractor show "that the Government itself 'dictated' the content of the warning," while others require proof that the "United States imposed a prohibition against health warnings" and yet others "apply a less stringent standard before the defense may be invoked." *Tate,* 55 F.3d at 1157 (internal punctuation and citation omitted).

 The question of the appropriate standard remains open in this Circuit. *Quiles,* 84 F.Supp.2d at 170–71.[7] Nevertheless, this court does not have to decide which standard to apply. Under any standard in which the defense applies, application of the government contractor defense must recognize that the defense "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law" and that this "displacement of ordinary tort liability occurs only where a significant conflict exists between an identifiable federal policy or interest and the operation of state law." *Hawaii Federal Asbestos Cases,* 960 F.2d 806, 810 (9th Cir.1992) (quoting *Boyle,* 487 U.S. at 507, 108 S.Ct. at 2516) (internal punctuation and additional citations ˙omitted). In the instant case, Northrop's allegations are insufficient to establish the existence of a significant conflict between a federal policy or interest and the operation of state law as required to implicate the defense.

---

**7.** *Quiles* involved a claim that an Army helicopter design was defective. Judge Woodlock granted summary judgment to the defendant, finding that it had established the government contractor defense as set forth in *Boyle.* He further noted that it was an open question as to how to apply *Boyle* to failure to warn claims, but that he did not need to reach the issue as in his case there was no evidence that any warning could have had a beneficial effect. 84 F.Supp.2d at 171. He noted, however, that he found the 6th Circuit's approach in *Tate v. Boeing Helicopters,* 55 F.3d 1150 (6th Cir.1995) "most compelling[.]" 84 F.Supp.2d at 171, n. 5. *Tate* also involved a claim of a failure to warn about a design defect, not a health factor. The *Tate* court found *Boyle* applicable where "the contractor can show: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew but the United States did not." 55 F.3d at 1157.

### C. *Sufficiency of the DeBois Affidavit*

The plaintiffs challenge the affidavit of John DeBois as not being based on personal knowledge. In light of the gross generalizations contained in the affidavit, the fact that Mr. DeBois was not employed by Grumman or Northrop Grumman during the relevant time, and the absence of any factual assertion to the effect that Mr. DeBois actually reviewed any relevant contracts or even had conversations with those who had personal knowledge, this court agrees that Mr. DeBois has failed "to establish personal knowledge with regard to whether a particular kind of warning was forbidden over twenty years prior to the start of [DeBois's] career." *Nesbiet,* 399 F.Supp.2d at 207, n. 17.[8] Consequently, this court recommends to the District Judge that paragraphs 16–21 of the affidavit be stricken.

This court does not believe that Mr. DeBois needs to be deposed as the deficiencies in the affidavit are apparent on its face. Moreover, this court's finding of a lack of personal knowledge is buttressed by the fact that, having asked for and been granted more time to respond to the plaintiffs' submission of regulations, Northrop did not supplement Mr. DeBois' affidavit. Instead it submitted a Surreply which fails to provide an affirmative, fact-based response to the plaintiffs' contentions that the Navy allowed safety warnings to be included by manufacturers. Therein Northrop claims ignorance about facts which should be within Mr. DeBois' scope of information, as defined in his affidavit. *See, e.g., Surreply Memo* at 2 (since plaintiffs did not provide a full copy of the text of Exhibit I, "Northrop has no way of knowing whether their cited text is an accurate representation of what the document states in whole"); *id.* at 3 ("Plaintiffs have not shown that any of these documents would have been incorporated in any Northrop contract or provided to Northrop pursuant to any contract for the manufacture of military aircraft."). If Mr. DeBois had the personal knowledge he claims to have as to "the current and historical procedures relating to contracts with the United States government as well as the terms typically included in such contracts," he should have been able to affirmatively confirm or deny plaintiffs' representations. *See Affidavit* at ¶ 14. Instead, faced with plaintiffs' information which strongly indicates that, at least with respect to safety warnings, the United States affirmatively wanted manufacturers to comply with state as well as federal laws, Mr. DeBois remained silent.

The conclusion that Mr. DeBois' affidavit is not based on his personal knowledge is further supported by the absence of exemplar contracts or regulations which could confirm his otherwise conclusory allegations. According to the affidavit, the Navy's requirements and practices apparently were consistent with respect to each and every Northrop contract, yet no contract has been provided. Mr. DeBois' generalized statements are insufficient to establish his personal knowledge concerning "the Navy's control over asbestos-related warnings during the relevant period." *Nesbiet,* 399 F.Supp.2d at 207, n. 18. *See also Green,* 366 F.Supp.2d at 157 (affidavit which failed to include any actual regulation or specification "raises real and signif-

---

8. The court does not find controlling the fact that an identical affidavit was submitted on behalf of a different person in the *Nesbiet* case. Presumably the affidavits were drafted by counsel. However, in light of the fact that one court has already found the affidavit to be lacking in details necessary to support a conclusion of personal knowledge, one could have expected more facts to be asserted in Mr. DeBois' affidavit, if they existed.

icant concern" and fails to meet defendant's burden for removal).

For these reasons, this court recommends that Mr. DeBois' affidavit be stricken. As detailed below, however, even if it is considered, it is insufficient to establish the existence of federal officer jurisdiction.

### D. Analysis of "Causal Connection" Requirement

The key issue in this case is whether Northrop has established that it was "acting under" a federal officer and that there was "a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims." [9] *Freiberg*, 245 F.Supp.2d at 1149. If Mr. DeBois' affidavit is stricken, as this court recommends, Northrop obviously has failed to meet its burden. Even if Mr. DeBois' affidavit is considered, however, the evidence is insufficient to establish grounds for removal.

■ "The established rule is that removal by a person 'acting under' a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's 'direct orders or comprehensive and detailed regulations.' It is not enough to prove only that 'the relevant acts occurred under the general auspices of a federal office or officer' or that a 'corporation participates in a regulated industry.' The official must have direct and detailed control over the defendant." *Id.* at 1152 (internal citations omitted).

■ "The nexus requirement is established by showing that the state action has arisen out of the acts done by defendant under color of federal authority and in

enforcement of federal law. Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon. To sustain this burden, the defendant must also by direct averment exclude the possibility that the state action was based on acts or conduct of his not justified by his federal duty." *Id.* at 1155 (internal citation and punctuation omitted).

■ In the instant case, Mr. DeBois' affidavit is remarkably silent as to Northrop's role and responsibility in developing the warnings that were eventually used. Thus, while he has attested that the Navy "had ultimate control" over the warnings, he has failed to indicate whether Northrop was responsible for providing any part of these warnings. Even more significantly, Mr. DeBois' affidavit leaves open the possibility that the Navy's specifications required simply that the manufacturer provide safety warnings in accordance with state law. This would be consistent with the regulations provided by the plaintiffs, which indicated that the Navy "specified" that the manufacturers comply with state law warning requirements. In short, Mr. DeBois' assertions that the Navy "had precise specifications as to the nature and contents of all written material" (¶ 18) and that "Northrop would not have been permitted to affix any type of warning or caution to a piece of equipment, beyond those expressly specified by the U.S. Navy" (¶ 17) do not rule out the possibility that Northrop was obligated to provide warnings sufficient to satisfy its state law obligations.

9. As detailed below, this analysis is virtually identical to the analysis needed to determine whether Northrop has asserted a colorable federal contractor defense. This court will not address whether Northrop was "acting under" a federal official since the "causal nexus" inquiry is controlling.

As noted above, courts apply differing standards in evaluating whether the control exercised by the government over warnings is sufficient to satisfy the "acting under" and "causal connection" requirements. Regardless of the standard applied, however, Northrop has failed to establish that a significant conflict exists between an identifiable federal policy or interest and the operation of state law. *See Boyle*, 487 U.S. at 507, 108 S.Ct. at 2516. The record before this court is to the effect that the Navy may have required compliance with state safety labeling requirements. Under such circumstances, removal was inappropriate and the motion to remand should be allowed.[10] *See, e.g., Freiberg*, 245 F.Supp.2d at 1155 (where defendants failed to "establish the DOE's direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards" of exposure to asbestos, motion to remand allowed); *Faulk*, 48 F.Supp.2d at 663 (remand allowed when the federal government "did not prevent Defendants from taking their own safety precautions heeding state-law standards above the minimum standards incorporated in their federal contracts"); *Hawaii Federal Asbestos Cases*, 960 F.2d at 813 (where the Navy "in no way prohibited [the defendants] from placing warnings on their insulation products" and the defendants "could have provided detailed and prominent statements regarding the dangers of asbestos insulation without violating the terms of their procurement contracts or their product specifications," military contractor defense was not available to manufacturers. "There thus existed no conflict between the state law duty to provide adequate warnings ... and the conditions imposed on them pursuant to the agreements they had entered into with the Government").

**E. Colorable Claim to a Federal Defense**

█ Also at issue in this case is whether Northrop has established a "colorable federal defense to the state claims." *Freiberg*, 245 F.Supp.2d at 1149. The question is not whether the defendant will prevail on such a defense, only whether a colorable claim to such a defense has been made. *See Fung v. Abex Corp.*, 816 F.Supp. 569, 573 (N.D.Cal.1992), *United States v. Todd*, 245 F.3d 691, 693 (8th Cir.2001).

As Northrop recognizes, courts often merge the acting under/causal relationship analysis discussed above with a claim of a common law government contractor defense as set forth in *Boyle*. *See Northrop Opp*. (Docket No. 13) at 8–9.[11] For the same reasons as detailed above, Northrop has not established a colorable contractor defense. *See Westbrook v. Asbestos Defendants*, No. C–01–1661 VRW, 2001 WL 902642* 2–2 (N.D.Cal. July 31, 2001) (where defendants have not shown that the "Navy required it to refrain from issuing warnings" about the dangers of asbestos, there was "no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs" and "no colorable military contractor defense to a failure to warn

---

**10.** Even under *Tate* Northrop had to establish that the "United States exercised its discretion and approved the warnings." *Tate*, 55 F.3d at 1157. In light of the ambiguities in Mr. DeBois's affidavit, Northrop failed to meet this standard.

**11.** This merger is due to the fact that under *Boyle* a defendant must establish that "the United States approved reasonably precise speculations." *Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518. Therefore, the government's role in setting requirements is critical under the government contractor defense.

claim."). *See also Joint Eastern and Southern District Asbestos Lit.,* 715 F.Supp. 1167, 1169 (E.D.N.Y.1988) (where "federal specifications were silent on the matter of warnings, [and] defendant could have provided adequate warnings to plaintiffs and complied with the federal specification" defendant failed to establish military contractor defense).

Northrop also argues that it has "more than a colorable derivative sovereign immunity defense." *Northrop Opp.* at 9. In light of this court's conclusion that Northrop failed to establish that it was acting under the direction of an officer and that a causal nexus existed between the defendant's actions under asserted federal authority and the plaintiffs' claims, removal would not be appropriate even if the defendant asserted a colorable federal defense. *See Faulk,* 48 F.Supp.2d at 653. If this issue is reached, however, this court finds that Northrop has not established a colorable derivative sovereign immunity defense.

"The Supreme Court has long held that, pursuant to sovereign immunity, a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government." *City of Worcester v. HCA Management Co., Inc.,* 753 F.Supp. 31, 37–38 (D.Mass. 1990). "Therefore, a private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: (1) its action was beyond the authority delegated to it; (2) the authority was invalidly conferred; or (3) the harm was caused by the private party's own tortious conduct." *Id.* at 38. In the instant case, however, Northrop has not shown that it was performing a government function and "purporting to act on [the Navy's] behalf" in connection with the manufacture of aircraft. *See Yearsley v. W.A. Ross Const.,* 309 U.S. 18, 21, 60 S.Ct. 413, 414, 84 L.Ed. 554 (1940). Northrop has not supplied any of its contracts with the government and has not otherwise provided evidence showing whether it was acting as an agent of the Navy rather than an independent contractor. Absent such evidence, Northrop cannot establish a colorable immunity claim.

On its face, the instant case appears very similar to *Whitaker v. Harvell–Kilgore Corp.,* 418 F.2d 1010 (5th Cir.1969). There the manufacturers of hand grenades for the military were sued when a grenade exploded prematurely, causing serious harm. The manufacturers claimed sovereign immunity on the grounds that they were "alter egos of the United States and that their actions [were] the actions of the United States[.]" *Id.* at 1013. In support of their claim, the defendants pointed to the fact that they operated an Ammunition Plant owned by the United States, the government furnished components for the grenades, the assembly of the grenades was in accordance with strict government specifications, the government supervised the assembly of the grenades and the government owned the grenades. *Id.* Furthermore, the government had agreed to indemnify the manufacturers. *Id.* at 1013–14. The court held, however, that these facts were insufficient to establish sovereign immunity. *Id.* at 1014–15. Rather, the court concluded that the manufacturers were independent contractors as evidenced by various contractual terms. *Id.*

In the instant case Northrop has not addressed its status as either an independent contractor or an alter ego of the Navy at all. It has not submitted any of its contract terms or described them in affidavits. As *Whitaker* establishes, the fact of close government supervision is not controlling on the issue of sovereign immunity. Northrop has not met its burden of

establishing even a colorable defense of sovereign immunity.

### F. *Motion to Sever*

For the reasons detailed above, this court recommends that the plaintiffs' motion to remand be allowed. Therefore, this court does not need to reach the issue of severance. If, however, the motion to remand is denied, this court recommends that the case against Northrop be severed.[12]

The only potential federal claim raised in this litigation relates to Northrop's federal contractor defense or claim of sovereign immunity. All other claims are based on state law and were appropriately brought in state court. Each defendant's involvement in the events leading up to Mr. Hilbert's illness is distinct, and in no way dependent on Northrop's status as a "federal contractor." The case will proceed much more rapidly in state court, thereby giving Mr. Hilbert the opportunity to participate in the trial. There is no reason for the 28 remaining defendants to await the resolution of claims against one defendant. Keeping the state law claims against the 28 defendants in federal court will in no way increase judicial efficiency and expediency. Rather, the resolution of the claims against the 28 state defendants may increase the speed by which the claims against the one alleged federal defendant may be resolved.

Again, this court believes that remand of the entire case is warranted. However, if Northrop's claim remains in federal court, this court recommends that the claims against the remaining defendants be severed and remanded.[13]

### III. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Plaintiffs' Motion to Remand (Docket No. 3) be ALLOWED and that Northrop's Motion to Stay (Docket No. 15) be DENIED.[14]

March 15, 2007.

12. While none of the other defendants has joined in Northrop's removal petition, several defendants have opposed any severance as not being the interest of judicial economy. (*See* Docket No. 28). For the reasons detailed above this court disagrees.

13. In light of the serious issues raised by Northrop, this court does not recommend that the plaintiffs be awarded their costs in opposing the motion to remand.

14. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).